IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PNC BANK, N.A., )
    Plaintiff, )
     )
vs. ) CIVIL ACTION NO. 14-00193-KD-B
     )
POUNDS WRECKING, INC. *et al.*, )
    Defendants. )

**ORDER**

This matter is before the Court on Plaintiff's Rule 55(a) and (b)(1) motion for entry of a default judgment against Defendant Pounds Wrecking, Inc. (Doc. 17).

**I.**    **Background**

Plaintiff PNC Bank, N.A. ("PNC") filed a Complaint (as amended) against Defendant Pounds Wrecking, Inc. ("Pounds Wrecking")[1] for breach of a promissory note, alleging that Pounds Wrecking failed and/or refused to pay PNC amounts due under a promissory note and thus is indebted to PNC for the amount due including attorney's fees, stemming from said breach and default.[2] (Docs. 1, 8). Specifically, on July 1, 2008, RBC Bank (USA),[3] and Pounds Wrecking executed a Promissory Note in the principal amount of $200,000. (Doc. 8-1 at 6-7).[4]

---

[1] The two (2) other claims, breach of 2007 Guaranty and 2008 Guaranty, are alleged solely against Joseph G. Pounds and those claims are stayed per bankruptcy.

[2] The claim sounds under Alabama state law. Although no federal question is asserted, the Court is satisfied that federal subject-matter jurisdiction was properly invoked by Plaintiff pursuant to 28 U.S.C. § 1332, as the well-pleaded allegations of the Complaint (and facts before the undersigned) establish complete diversity of citizenship and that the amount in controversy exceeds the sum of $75,000, exclusive of costs and attorney's fees.

[3] PNC Bank, N.A. is the successor to RBC Bank (USA). (Doc. 17-2 at 3-4 (Aff. Enns)).

[4] Alabama law applies to the subject agreement as the Promissory Note specifically provides for such as the governing law. (Doc. 8-1 at 7 ("[t]his Note will be governed by federal law applicable to Lender and, to the

(Continued)

1

The Note was secured by a July 1, 2008 mortgage recorded in the Probate Court of Mobile County, Alabama on July 3, 2008. (Doc. 8-1 at 9-18). The Note matured on July 1, 2013 and PNC alleges that Pounds Wrecking failed to pay the sums due as provided for under the terms of the Note, and thus defaulted. PNC accelerated the Note and on September 9, 2013 made demand on Pounds Wrecking for payment of all sums due. (Doc. 8-1 at 30-32). According to PNC, as of August 5, 2014 the outstanding indebtedness on the Note totals **$155,787.07** – comprised of principal in the amount of $130,490.64, $10,396.42 in unpaid accrued interest, $7,040.51 in late charges, per diem interest at the rate of $24.466995, and $7,859.50 in attorneys' fees,[5] plus "future accruals of interest and court costs." (Docs. 8, 17).

On June 11, 2014, Pounds Wrecking was served with a copy of the summons and complaint by certified mail, by personal service on its Agent for Service of Process, Joseph G. Pounds.[6] (Doc. 11). Pounds Wrecking's answer was due by July 2, 2014. (Id.) Pounds Wrecking did not answer or otherwise defend. As such, upon PNC's application, the Clerk entered a default against Pounds Wrecking on July 9, 2014. (Doc. 14). PNC now moves for entry of a default judgment against Pounds Wrecking and seeks a monetary judgment under Rule 54(b) in favor of PNC as to the amounts owed to it by Pounds Wrecking. (Doc. 17).

---

extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Alabama[]").

[5] PNC appears to seek to recover of all its attorneys' fees against both defendants, not just the fees incurred as to Pounds Wrecking.

[6] This Court generally requires that some notice be given to defendants between the time of service of the summons and complaint and the entry of a default judgment. See, e.g., JP Morgan Chase Bank, N.A. v. Surek, 2011 WL 5289254, *2 (S.D. Ala. Nov. 4, 2011); Pennsylvania Nat. Mut. Cas. Ins. Co. v. King, 2012 WL 1712670, *2 n.4 (S.D. Ala. May 15, 2012). Based on a review of the record, the Court is satisfied that Pounds Wrecking is on notice of the default proceedings against it, as it was listed on Plaintiff's certificate of service with its application for default and motion for default judgment, and the Court mailed a copy of the Clerk's entry of default to Pounds Wrecking's address of record.

## II. Default Judgment

The Federal Rules of Civil Procedure establish a two-part process for obtaining a default judgment. Fed.R.Civ.P. 55. If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation" the clerk must enter default judgment. Fed.R.Civ.P. 55(b)(1). In all other circumstances, such as here, "the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2).

The Eleventh Circuit has held that although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (*per curiam*) (citations and internal quotations omitted). Moreover, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Id. (emphasis omitted). Therefore, PNC must establish a "prima facie liability case" against Pounds Wrecking. Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004) (citations omitted). Further, when assessing damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003). Overall, "there is a strong policy of determining cases on their merits" and therefore defaults are viewed "with disfavor." In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). "Since this

3

case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment." Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada, 674 F.2d 1365, 1369 (11th Cir. 1982).

In support of its motion, PNC has submitted two (2) Affidavits: Stephen Enns (PNC Asset Manager) and T. Julian Motes (one of PNC's attorneys). (Doc. 17-2 (Aff. Enns); Doc. 17-3 (Aff. Motes)). PNC also filed with its original and amended complaints, a copy of the Promissory Note. (Doc. 1-2; Doc. 8-1).

Under Alabama law, loan documents are governed under contract law. See Penick v. Most Worshipful Prince Hall Grand Lodge F&AM of Ala., Inc., 46 So.3d 416, 428 (Ala. 2010) (construing terms of a mortgage, notes and modification agreement). In that regard, "[i]f the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment." Diamond v. Bank of Ala., 43 So.3d 552, 563 (Ala. 2009) (construing terms of a promissory note, guaranty, line of credit and letter of credit and finding documents underlying loan transaction were not ambiguous) (citations omitted). See Peppertree Apts., Ltd. v. Peppertree Apts., 631 So.2d 873, 878 (Ala. 1993) ("The intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous.").

In order to prevail on its breach of promissory note claim against Pounds Wrecking, PNC must establish the following elements: 1) a valid contract (here a promissory note) binding the parties; 2) plaintiff's performance under the contract; 3) defendant's non-performance; and 4) resulting damages. See, e.g., National Sec. Fire & Cas. Co. v. DeWitt, 85 So.3d 355, 371 (Ala. 2011); Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala. 2009); Vision Bank v. Algernon

Land Co., L.L.C., 2011 WL 1380062, *7 (S.D. Ala. Apr. 12, 2011); Wachovia Bank, NA v. L&H Invest., LLC, 2010 WL 3825572, *4 (M.D. Ala. Sep. 24, 2010).

The undisputed evidence of record confirms that these elements are satisfied with regard to the breach of the Promissory Note. Specifically, PNC loaned funds to Pounds Wrecking via a valid contract binding the parties (the Promissory Note);[7] the Note was in default (per the Notice of default letter) because Pounds Wrecking failed to perform (*i.e.*, pay amounts due and owing under its terms); PNC performed (*i.e.*, it loaned Pounds Wrecking the funds); and damages have resulted (*i.e.*, a balance is owed to PNC). Further, as to evidence of the precise debt due ($155,787.07 under the terms of the Note), PNC has submitted two (2) uncontroverted Affidavits which verify the facts as plead in the Complaint and that all copies attached were true, correct and genuine. (Docs. 17-2, 17-3). Alabama law provides that the proffer of a copy of a note and affidavit testimony as to the amounts due under a note, as well as a defendant's failure to make the required payments, is sufficient to establish a plaintiff's case to recover a note. See, e.g., Wells Fargo Bank, N.A. v. Vergos, 2012 WL 206169, *2 (S.D. Ala. Jan. 24, 2012) ("Alabama law provides that the proffer of a copy of the note and affidavit testimony as to the amounts due under the note, as well as the defendant's failure to make the required payments, is sufficient to establish a plaintiff's case to recover a note[]"). Thus, under Alabama law, PNC is entitled to entry of default judgment as a matter of law on its breach of promissory note claim against Pounds Wrecking.

Further, on a motion for default judgment, the "court has an obligation to assure that there is a legitimate basis for any damage award it enters." Philpot, 317 F.3d at 1266. In the

---

[7] While the Note was executed with RBC Bank (USA), PNC is the successor to RBC Bank (USA) and thus PNC is the current holder of the Note and is entitled to enforce same. (Doc. 17-2 (Aff. Enns)).

motion for default judgment, PNC alleges that the amount owed on the Note totals **$155,787.07** – comprised of principal in the amount of $130,490.64, $10,396.42 in unpaid accrued interest, $7,040.51 in late charges, per diem interest at the rate of $24.466995 from July 30, 2014, and $7,859.50 in attorneys' fees, plus "future accruals of interest and court costs." (Docs. 8, 17, 17-2). Based on the record (including the Affidavits and copies of the relevant loan documents), the Court is satisfied that entry of a default judgment in favor of PNC and against Pounds Wrecking is proper in the amount of **$130,490.64** (outstanding principal) ***plus*** $10,396.42 (unpaid accrued interest), $7,040.51 (late charges), and per diem interest at the rate of $24.466995 from July 30, 2014 through the date of the entry of judgment. However, the amount of attorneys' fees and future accruals of interest and court costs is a different matter.

### III.     Attorneys' Fees and Costs

PNC moves for recovery of **$7,859.50** in attorneys' fees as well as "future accruals of interest and court costs." The Promissory Note provides that Pounds Wrecking shall pay its attorneys fees and costs if Pounds Wrecking does not pay. (Doc. 8-1 at 7). Per the Note, Pounds Wrecking agreed to pay the bank's attorneys' fees and legal expenses as well as any court costs. (Id.) In his Affidavit, Motes (counsel for PNC) asserts that the requested fees and expenses were reasonably incurred. (Doc. 17-3 at 3 (Aff. A.Motes)).

"Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract...." Jones v. Regions Bank, 25 So.3d 427, 441 (Ala. 2009) (citations omitted). See also Battle v. City of Birmingham, 656 So.2d 344, 347 (Ala. 1995) (same). The law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach." Army Aviation Center Federal Credit Union v. Poston, 460 So.2d 139, 141 (Ala.1984). See also Ierna v. Arthur Murray Int'l, Inc., 833 F.2d 1472, 1476 (11th

Cir. 1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case[]"). Under Alabama law, such attorney's fees are recoverable; however, recovery is subject to Alabama's imposition of a reasonableness constraint on all fee-shifting contracts, as a matter of public policy. See, e.g., Willow Lake Residential Ass'n, Inc. v. Juliano, 80 So.3d 226, 241 (Ala. Civ. App. 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation[]"); PNCEF, LLC v. Hendricks Bldg. Supply LLC, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010) (rejecting claim for attorney's fees in amount of 15% of fund to be collected, where plaintiff made no showing of its actual attorney's fee incurred in enforcing contract). Thus, PNC is entitled to recover only its reasonable attorneys' fees and costs incurred in collecting on Pounds Wrecking's debt.

The calculation of reasonable attorney's fees is clearly within the sound discretion of the court. Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1187 (11th Cir. 1983); Kiker v. Probate Court of Mobile Cty., 67 So.3d 865, 867 (Ala. 2010). In assessing the reasonableness of attorney's fee requests, courts generally apply the "lodestar" method to obtain an objective estimate of the value of an attorney's services. Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988); Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000) (explaining that the lodestar "is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area"). The value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay, defined as "the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895–896 n. 11 (1984). The party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours

expended via specific evidence supporting the hours and rates claimed. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). The court may utilize its own "knowledge and expertise" to come to an independent judgment regarding the reasonableness of requested attorney's fees. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).

When seeking attorney's fees, the prevailing party must not request fees for hours that are "excessive, redundant, or otherwise unnecessary;" or request fees for unsuccessful claims. Hensley, 461 U.S. at 434-435. When a request for attorney's fees is unreasonably high, the court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap it Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). Likewise, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. See, e.g., Norman, 836 F.2d at 1299. Notably,"[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment with or without the aid of witnesses." Id. at 1303 (citations omitted).

Further, the lodestar figure established by the Court may be adjusted by consideration of various factors including:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala. 1988). See also e.g. Pharmacia Corp. v. McGowan, 915 So.2d 549, 552-554 (Ala. 2004); Lolley v. Citizens Bank, 494 So.2d 19 (Ala. 1986). These criteria are for purposes of evaluating whether an attorney fee is reasonable but they are not an exhaustive list of specific criteria that must all be met. Beal Bank, SSB v. Schilleci, 896 So.2d 395, 403 (Ala. 2004).

A. **Reasonable Rate**

A plaintiff has the burden of supplying the Court with specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed. Barnes, 168 F.3d at 427 (citing Norman, 836 F.2d at 1303). The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. In this case, the relevant legal community is Mobile, Alabama. See Barnes, 168 F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." (citation omitted)). The Court, which is familiar with the prevailing rates in the local market (Mobile, Alabama), may act as its own expert and rely on its "knowledge and experience" to determine the reasonableness and propriety of the requested fees. Loranger, 10 F.3d at 781.

The rates requested include rates for time counsel ($175/hour for counsel with 19-36 years of experience) as well as paralegals (ranging from $90/hour to $120/hour) expended, for a total of **47.40** hours litigating this case. (Doc. 17-3 at 4). Specifically, Plaintiff seeks $175/hour for 19.90 hours of work by George M. Neal, Jr. (36 years of experience); $175/hour for 19.40 hours of work by T. Julian Motes (31 years of experience); $175/hour for 2.8 hours of work by Peter Wright (19 years of experience); $90/hour for 4.8 hours for paralegal Susan Conger (years

of experience unknown); and $120/hour for .50 hours for paralegal Sheldon Eller (years of experience unknown). (Doc. 17-3 at 4). As set forth below, the Court, utilizing its own expertise in this market as well as a review of prior fee awards, has determined hourly rates and time that it deems reasonable and appropriate for the work performed in this case. See, e.g., Vision Bank v. FP Mgmt., LLC, 2012 WL 222951, *3 (S.D. Ala. Jan. 25, 2012); Vision Bank v. Anderson, 2011 WL 2142786, *3 (S.D. Ala. May 31, 2011); Mitchell Co., Inc. v. Campus, 2009 WL 2567889, *1 and *17–18 (S.D. Ala. Aug. 18, 2009); Wells Fargo Bank, N.A. v. Williamson, 2011 WL 382799, *4 (S.D. Ala. Feb. 3, 2011).

1. **Partners**[8]

Regarding the requested $175/hour rate for partners Neal, Motes and Wright (having over 10 years of experience) this rate does not exceed rates which have been found reasonable in this Court. See, e.g., Wells Fargo Bank, N.A. v. Friday Const. Co., Inc., 2012 5381558, *5 (S.D. Ala. Oct. 31, 2012); Williamson, 2011 WL 382799 at *4. As such, upon consideration, the Court finds the requested rates for Neal, Motes and Wright are due to be granted, as they are reasonable and below partner rates previously awarded by this Court. As such, the Court awards attorneys Neal, Motes and Wright, the rate of **$175/hour**.

2. **Paralegals**

PNC seeks recovery of fees for the work of two (2) paralegals: Conger and Eller, whose years experience are not provided. In this market, this Court regularly approves rates of $75/hour for paralegals. See, e.g., SE Property Holdings, LLC v. Green, 2013 WL 790902, *6 (S.D. Ala. Mar. 1, 2013); Zuffa, LLC v. Al–Shaikh, 2011 WL 1539878, *9 (S.D. Ala. Apr. 21, 2011); Williamson, 2011 WL 382799, *5; Adams v. Austal, U.S.A., L.L.C., 2009 WL 3261955,

---

[8] Identified as "shareholders" on the law firm's website.

*2 (S.D. Ala. Oct. 7, 2009); Lanier Construction Inc. v. Carbone Properties of Mobile, LLC, CV 06–0070–CB–B (S.D. Ala. Feb. 12, 2008). As such, the Court awards the hourly rate of **$75/hour** for work performed by paralegals Conger and Eller.

## B. Reasonable Hours Expended

In determining whether the number of hours expended are reasonable, the Court should not include any hours which are "excessive, redundant, or otherwise unnecessary." Norman, 836 F.2d at 1301. When awarding an attorney's fee, the "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Barnes, 168 F.3d at 428. The Court will not permit a party to recover fees for hours that are excessive, redundant, or unnecessary, *i.e.*, hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301 (emphasis omitted). While there is no *per se* rule of proportionality, City of Riverside v. Rivera, 477 U.S. 561, 574 (1986), the Supreme Court has made clear that such could still be considered a factor in determining the reasonableness of a fee request. "The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988.... It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees." Id. (citation omitted). In sum, "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary. Courts are not authorized to be generous with the money of others." Barnes, 168 F.3d at 428.

In conjunction with the motion, counsel for PNC has submitted billing records (through July 15, 2014) (Doc. 17-3 at 9-14). Counsel for PNC's billing records (through July 15, 2014)

11

(Doc. 17-3 at 9-14) indicate that the individuals working on this cased billed a total of **47.40** billed hours. (Doc. 17-3 at 9-14). Counsel for PNC asserts further, that the time expended in this case was reasonable. (Id.) However, a review of these records results in a need for further explanation and information from counsel.

Specifically, counsel has not differentiated the attorneys' fees sought as to individual defendant Joseph Pounds versus corporate defendant Pounds Wrecking, and the present motion is solely as to Pounds Wrecking, such that only those entries which are clearly as to Pounds Wrecking may be recoverable. Additionally, there are gaps in the billing record and billed time for items seemingly unrelated to PNC's breach of promissory note claim against Pounds Wrecking, for which recovery would then not be allowable. For example, the entries from 4/3/14 through 4/23/14 (Doc. 17-3 at 9) are related to billed time for an estate/probate claim of Joseph B. Pounds filed in Mobile County Probate Court. It does not appear that such a claim is part of PNC's breach of promissory note action against Pounds Wrecking (and PNC has not alleged as such). Moreover, there are a number of entries which reference a "Daniel Fourmont" but there is no information as to his relevance to PNC's breach of promissory note claim against Pounds Wrecking. Further, there are many entries that are so redacted there is no information left indicating that the billed time was even incurred as part of PNC's breach of promissory note claim against Pounds Wrecking. (See, e.g., Doc. 17-3 at 10, 5/28/14 .3 Motes entry stating only "begin review of"). Finally, there are numerous entries relating to property leases, lessee requests, change of ownership forms, cell phone towers, and rents – as well as to something related to "Crown Castle" (Doc. 17-3 at 13) – yet no indication as to how such billed time is relevant to PNC's breach of promissory note claim against Pounds Wrecking. (See, e.g., Doc. 17-3 at 11, 6/19/14 Motes entry).

As such, at present, the Court is not satisfied that there is an ascertainable amount of damages. "[A]llegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." Miller v. Paradise of Port Richey, Inc., 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999).

PNC is **ORDERED** to file by **September 23, 2014**, an amended request for attorney fees which addresses the concerns delineated above.

### C. Costs

PNC does not seek recovery of any costs it has *already* incurred, and has also submitted no documentation in support of same. Rather, PNC seeks to recover an additional unknown sum for "future accruals of … court costs." (Doc. 17 at 4). However, PNC has provided no case law supporting the propriety and/or reasonableness of a party's ability to recover costs *not yet incurred*, and thus the request is **DENIED.**

### IV. Conclusion

Accordingly, it is **ORDERED** that PNC's motion for default judgment against Pounds Wrecking, Inc. (Doc. 17) is **GRANTED in part** and **DENIED in part** as follows: 1) **GRANTED** as to its claim for breach of promissory note, but with leave to prove damages; and 2) **DENIED** as to its request for future accruals of courts costs.

PNC is **ORDERED** to file by **September 23, 2014**, an amended request for attorney fees. The Court will then assess the full amount of damages due to PNC due to Pounds Wrecking, Inc.'s breach of the promissory note, and issue a separate order and Rule 54(b) Judgment[9] as to same.

---

[9] As requested by the parties given individual Joseph Pounds' bankruptcy status.

The Clerk is **DIRECTED** to provide a copy of this Order, via certified mail, to Defendant Pounds Wrecking, at the address of record where service was perfected.

**DONE** and **ORDERED** this the **16th** day of **September 2014.**

                                               s/Kristi K. DuBose
                                               **KRISTI K. DUBOSE**
                                               **UNITED STATES DISTRICT JUDGE**